UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

MARCELLA KELLY and
NATHAN KELLY,

   Plaintiff,

CASE NO.:

-VS-

NISSAN MOTOR ACCEPTANCE
CORPORATION,

   Defendant.
_____/

## COMPLAINT

1. Plaintiffs, Marcella Kelly ("Marcella") and Nathan Kelly ("Nathan") allege violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2. The TCPA was enacted to prevent companies like NISSAN MOTOR ACCEPTANCE CORPORATION ("Nissan Motor"), from invading American citizens' privacy and prevent abusive "robo-calls."

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." Mims v. Arrow Fin. Servs., LLC, –US--, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give

telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.,* 746 F. 3d 1242 (11th Cir. 2014).

5.     "No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.  Most members of the public want to limit calls, especially cellphone calls, to family and acquaintances, and to get their political information (not to mention their advertisements) [*6] in other ways."  *Patriotic Veterans v. Zoeller*, No. 16-2059, 2017 U.S. App. LEXIS 47, at *5-6 (7th Cir. Jan 3, 2017).

6.     According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

## JURISDICTION AND VENUE

7.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

8.     Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9.     The alleged violations described herein occurred in Franklin County, Kentucky. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the

judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

10. Plaintiffs are natural persons, and citizens of the State of Kentucky, residing in Frankfort, Franklin County, Kentucky.

11. Plaintiffs are the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12. Defendant is a foreign company with its principal place of business located at One Nissan Way, Franklin TN, 37067, and which conducts business in the State of Kentucky through its registered agent, Corporation Service Company, located at 421 West Main Street, Frankfort KY 40601.

13. Plaintiffs are the regular users and carriers of the cellular telephone number at issue, (502) *** - 3345, and were the called parties and recipients of Defendant's hereinafter described calls.

14. On several occasions over the last four (4) years, Plaintiffs instructed Defendant's agent to stop calling their cellular telephone.

15. Upon receipt of the calls from Defendant, Plaintiffs' caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: (800) 777-6116, and (800) 888-2799, and when those numbers are called, a pre-recorded message answers "Thank you for calling Nissan Motor Acceptance Corporation and Infiniti Financial Services. Your call may be recorded or monitored for quality purposes. If you are calling regarding your Nissan account, please press one. If you are calling for your Infiniti account, please press two."

16. Upon information and belief, some or all of the calls the Defendant made to Plaintiffs' cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls they received, and because when they answered a call from the Defendant they would hear an extended pause before a representative would come on the line.

17. Furthermore, some or all of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

18. None of Defendant's telephone calls placed to Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

19. Defendant attempted to collect a debt from the Plaintiffs by this campaign of telephone calls messages.

20. In or about late June of 2016, Marcella received a call from the Defendant, met with an extended pause, eventually was connected to a live representative, and explained to that agent/representative of Defendant that her payment would be received shortly, that they did not need to call to remind her, and demanded that the Defendant cease placing calls to her aforementioned cellular telephone number.

21. During the aforementioned phone conversation in or about late June of 2016 with Defendant's agent/representative, Plaintiff unequivocally revoked any express consent Defendant may have had for placement of telephone calls to Plaintiff's aforementioned cellular

telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23. Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

24. Additionally, in or about the middle of July of 2016, due to continued automated calls to Plaintiffs' aforementioned cellular telephone number from the Defendant, Nathan received a call from Defendant, met with an extended pause, was eventually connected to a live agent/representative of Defendant, and informed the agent/representative of Defendant that Marcella had previously informed them not to call their cellular phone, and again demanded that Defendant cease placing calls to their aforementioned cellular telephone number.

25. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abuse, calling the Plaintiffs despite the Plaintiffs revoking any express consent the Defendant may have had to call their aforementioned cellular telephone number.

26. On at least ten (10) separate occasions, Plaintiffs have either answered a call from Defendant or returned a call to Defendant regarding their account, held the line to be connected to a live representative, and demanded that Defendant cease placing calls to their aforementioned cellular telephone number. Their principal reason for answering these calls and making these demands of Nissan Motor was the cumulative injury and annoyance they suffered from the calls placed by Nissan Motor. These injuries are further described in paragraphs 29 through 35 herein.

27. Each of the Plaintiffs' requests for the harassment to end was ignored.

28. From about late June of 2016 through the filing of this Complaint, Defendant has placed approximately one-hundred (100) actionable calls to Plaintiffs' aforementioned cellular telephone number. (Please see attached **Exhibit "A"** representing a non-exclusive call log of eighty-one (81) calls from January 11, 2017 through February 02, 2017).

29. From each and every call placed without express consent by Defendant to Plaintiffs' cell phone, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

30. From each and every call without express consent placed by Defendant to Plaintiffs' cell phone, Plaintiffs suffered the injury of the occupation of their cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's calls.

31. From each and every call placed without express consent by Defendant to Plaintiffs' cell phone, Plaintiffs suffered the injury of unnecessary expenditure of their time. Plaintiffs had to waste time to deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phone, which are designed to inform the user of important missed communications.

32. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone was an injury in the form of a nuisance and annoyance to the Plaintiffs. For calls that were answered, Plaintiffs had to go through the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phone, which are designed to inform the user of important missed communications.

33. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone resulted in the injury of unnecessary expenditure of Plaintiffs' cell phone's battery power.

34. Each and every call placed without express consent by Defendant to Plaintiffs' cell phone resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular phone and their cellular phone services.

35. As a result of the calls described above, Plaintiffs suffered an invasion of privacy. Plaintiffs were also affected in a personal and individualized way by stress, anxiety, and aggravation.

36. Defendant's corporate policy is structured so as to continue to call individuals like the Plaintiffs, despite these individuals explaining to Defendant they do not wish to be called.

37. Defendant's corporate policy provided no means for Plaintiffs to have Plaintiffs' number removed from Defendant's call list.

38. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

39. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

40. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

41. Defendant violated the TCPA with respect to the Plaintiffs.

42. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiffs.

**COUNT I**
**(Violation of the TCPA)**

43. Plaintiffs reallege and incorporate paragraphs one (1) through forty-two (42) above as if fully set forth herein.

44. Defendant willfully violated the TCPA with respect to Plaintiffs, specifically for each of the auto-dialer calls made to Plaintiffs' cellular telephone after Plaintiffs notified Defendant that Plaintiffs did not wish to receive any telephone communication from Defendant, and demanded for the calls to stop.

45. Defendant repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against Defendant for statutory damages, treble damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully Submitted,

*/s/ Shaughn C. Hill*
SHAUGHN C. HILL, ESQUIRE
Florida Bar No. 105998
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Email: SHill@ForThePeople.com
Secondary: JSherwood@ForThePeople.com
*Attorney for Plaintiff*